**H–C MANAGEMENT COMPANY, INC., d/b/a Bar Harbor Motor Inn,**

v.

**MAINE DEPARTMENT OF LABOR, et al.**

Supreme Judicial Court of Maine.

Argued June 5, 1986.
Decided Aug. 1, 1986.

Murray, Plumb & Murray, John Bannon (orally), Portland, for plaintiff.

James Tierney, Atty. Gen., Mary Lou Dyer (orally), Pamela Waite, Asst. Attys. Gen., Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

H–C Management Company, Inc. ("H–C Management"), the employer, appeals from a judgment of the Superior Court, Cumberland County, affirming a decision of the Unemployment Insurance Commission ("Commission") to grant unemployment benefits to Steven Tyler. On appeal, H–C Management argues that the Commission erred as a matter of law in failing to find that Tyler was disqualified from receiving benefits under 26 M.R.S.A. §§ 1193(1)(A) and (3) (1974 & Supp.1985) because he either (1) voluntarily left his employment without good cause or (2) refused an offer of suitable employment.[1] Because we find that Tyler did not voluntarily quit his job

and that H–C Management failed in the first instance to tender an offer of employment to him, we affirm the judgment.

Tyler was hired by H–C Management at the close of May 1983 to act as the night auditor at the Bar Harbor Motor Inn on Mount Desert Island. The Inn operates as a seasonal business and is open from the third week of May to the end of October. During his tenure at the Inn, Tyler had several conversations with the manager concerning the possibility of his return to work at the Inn next year. Tyler, however, was never specifically offered a position for the 1984 season and neither salary nor starting date were discussed. In fact, the manager himself testified that it was not the policy of H–C Management to make job offers to employees in October for the following season.

After the closing, Tyler attempted to secure work in the area of Mount Desert Island to no avail. During this time he was also transporting his infirm mother on the average of one time per month to the Veteran's Administration hospital in Togus for treatment. As a result of his inability to find work on the Island and in response to his mother's health, Tyler moved 120 miles to Manchester, near the capitol city of Augusta, in order to increase his chances of obtaining work and to be closer to the V.A. hospital at Togus. Despite the move, however, Tyler was unable to find employment and in May of 1984 applied for unemployment benefits to the Bureau of Employment Security.

In response to Tyler's claim, H–C Management filed a letter with the Bureau asserting that Tyler had refused an offer of suitable work and thus should be disqualified from receiving benefits. In June

---

1. 26 M.R.S.A. §§ 1193(1)(A) & (3) (1974 & Supp. 1985) provide in pertinent part:

    An individual shall be disqualified for benefits:

    1. Voluntarily leaves work
      A. For the week in which he left his regular employment voluntarily without good cause attributable to such employment, or to a claimant who has voluntarily removed himself from the labor market where he is presently employed to an area where employment opportunity is less frequent, ...

    . . . .

    3. Refused to accept work
      For the duration of his unemployment subsequent to having refused to accept an offer of suitable work for which he is reasonably fitted, ...

of 1984, however, a Deputy of the Bureau awarded the employee benefits beginning June 10, 1984. The Deputy's finding was premised on the ground that Tyler did not refuse to accept an offer of suitable employment because H–C Management had failed in the first instance to tender a bona fide offer of employment to Tyler for the 1984 season. The Appeal Tribunal of the Bureau held an evidentiary hearing and heard the testimony of Tyler and the general manager of H–C Management. The Tribunal made findings of fact, determined that there was no offer of employment made to Tyler, and affirmed the decision of the Deputy. Alternatively, the Appeal Tribunal also held that even if work was offered to Tyler, the position was unsuitable owing to its distance from his new home in Manchester. The Unemployment Insurance Commission adopted and affirmed the Appeal Tribunal's decision. H–C Management appealed pursuant to M.R.Civ.P. 80C. The Superior Court affirmed the Commissioner's decision.

I

■ When reviewing a decision of the Unemployment Insurance Commission, this Court pays great deference to the Commission's factual findings and will uphold such findings if supported by competent evidence. *Shone v. Maine Employment Sec. Comm'n.*, 441 A.2d 282, 283 (Me.1982). Moreover, this Court will also determine whether within its findings the Commission correctly applied the applicable law and we will vacate its determinations only if premised on erroneous legal conclusions. *Tobin v. Maine Employment Sec. Comm'n.*, 420 A.2d 222, 224 (Me.1980).

As its first point on appeal, H–C Management argues that the Commission erred as a matter of law by failing to decide that Tyler was disqualified from drawing benefits under 26 M.R.S.A. § 1193(1)(A) because he voluntarily left his employment with the Inn without good cause by moving to Manchester. Specifically, H–C Management maintains that Tyler had an ongoing employment relationship with the Inn during the off-season that he voluntarily severed by relocating.

In order to be disqualified from benefits under Section 1193(1)(A), an employee must voluntarily leave his *regular employment* without good cause. This section, consequently, presumes the existence of an ongoing employment relationship that is severed unreasonably by the employee. In order for H–C Management to benefit by Section 1193(1)(A), therefore, the record had to show that Tyler, as a seasonal employee, had an ongoing employment relationship with the Inn in the off-season that could in fact have been severed voluntarily by his move to Manchester. Under the facts of this case, it is clear that Tyler's employment relationship with H–C Management terminated in October of 1983 and that he did not have an ongoing employment relationship in the off-season.

The record in this case discloses that Tyler was hired by the Bar Harbor Motor Inn for the 1983 season. Although there was some discussion during his tenure about his return in 1984, Tyler left the Inn without an offer of employment. In fact, the Inn's manager specifically testified that it was not the policy of H–C Management to make job offers in October for the following season. As a result, when the season closed in October 1983, Tyler's job terminated.

Although Maine's unemployment security law, 26 M.R.S.A. § 1251, and Me.Unemp. Insur.Comm'n.Reg. ch. 6 § 2A, provide that a seasonal employee will be paid unemployment benefits only during the seasonal period in which he earned wage credits, the statute in no way suggests that a seasonal employee such as Tyler has an automatic ongoing employment relationship with his employer in the off-season simply by accepting a seasonal position. In fact, the statute defines *employment* as "... any service performed ... for wages, or under any contract for hire, written or oral, express or implied, 26 M.R.S.A. § 1043(11) (Supp.1985). Inasmuch as Tyler

was neither performing a service for wages nor under an express or implied contract for hire for the following season, he cannot be deemed to have voluntarily quit his regular employment within the meaning of Section 1193(1)(A). As a result, the Commission did not err in failing to disqualify Tyler for benefits on that ground.

## II

As its second point on appeal H–C Management argues alternatively that the Commission erred in holding that no offer of employment was tendered to Tyler for the 1984 season that could have disqualified him under Section 1193(3). On this issue, the employer maintains that the Inn offered employment to Tyler for the 1984 season and that he refused this suitable offer of work by moving to Manchester.

In its final decision, the Commission affirmed the Appeal Tribunal's finding that H–C Management had in fact failed to tender an offer of employment to Tyler. This conclusion is supported by the following competent evidence: (1) H–C Management admitted to never having tendered an express offer of employment to Tyler, (2) despite general discussion of a possible return in 1984, the employer never discussed salary or starting date with the employee, (3) the Inn's manager testified that it was not company policy to extend offers of future employment to its employees at the close of the season, (4) the Inn never attempted to contact Tyler during the winter months to offer him employment for the 1984 season. Because this evidence supports the Commission's finding that no offer of employment was made to Tyler, we hold that the Commission was also correct in failing to disqualify Tyler under Section 1193(3).[2]

The entry is:

Judgment affirmed.

All concurring.

---

2. Our conclusion that no offer of employment was made to Tyler, moreover, makes it unnecessary for us to address the Appeal Tribunal's alternative ruling that even if an offer of employment was made by the Inn, it was unsuitable due to Tyler's distance from the job.